Parker, J.
• This proceeding is brought to reverse a judgment of the court of common pleas of this county. Mr. Ward brought an action in the court below against the board of education of the city of Toledo to recover on a claim for a part of his salary, which he said had not been paid to him, and after he had rested, the case was taken from the jury by the trial judge, and the jury directed to return a verdict for the defendant, which was done. On account of this action of the court Ward prosecutes error. He sets forth in his petition:
“That the defendant, the Board of Education of the city of Toledo, Ohio, on or about May 1, 1897, duly employed and appointed one A. A. McDonald as superintendent of the public schools of the city of Toledo, Ohio, for a period of two years, beginning on July 1, 1897, and ending on June 30, 1899. That on or about January 15, 1898, the said defendant, the Board of Education of the city of Toledo, Ohio, suspended tne said A. A. McDonald from his said position as superintendent of the said schools. That on January 31, 1898, at a regular session of the board of education of the city of Toledo, Ohio, said defendant duly *701 elected, employed and appointed the said plaintiff John I. Ward to superintend the public ward school's of the city of Toledo, Ohio, to serve out the unexpired term of the said A. A. McDonald, which term would have ended as herein-before stated on June 30, 1899. The said board of education of the city of Toledo, Ohio, thus employing the said plaintiff to serve in the said capacity until June 30, 1899, at the stipulated price of II, 800 a year. And plaintiff says he accepted the said employment and said position at the said price, and immediately entered upon the performance of the duties pertaining to the said position. That he served in the said capacity at the said price until on or about April á, 1898, when the defendant,the Board of Education of the city of Toledo, Ohio, by reason of the meritorious work on the part of the plaintiff as such superintendent of the said public ward schools of the said city, increased the pay or compensation of the plaintiff from $1,800 a year to $2,500 a year for the remainder of plaintiff’s term, ending June 30,j.l899, said increase to begin on April 1, 1898, That from April 1, 1898, the plaintiff should receive $2,500 a year for his said services until his term closed on June 30,1899. Plaintiff says that he accepted this increase in his pay or compensation for his services,and that he continued at his said work as superintendent of the said ward schools’ until on or about July 22, 1898, at which time he received notice from the defendant the said Board of Education of the city of Toledo, Ohio,that he had been appointed a teacher in the Toledo public schools,and that he should go to teaching in the Jefferson school in said city.”
, Then he avers that in pursuance of that appointment he served out the remainder of this time as principal of the Jefferson school, also as teacher of the training school, but that the board of education allowed and paid him for the time that he thus served at the rate of $1,800 a year only. The averment is that he received $1,782 a year. There is a matter of $18.00 a year subtracted from his salary on account of the teachers’ pension fund, but counsel for plaintiff in error makes no contention on account of the $18.00, and therefore, I will make no further reference to it, but treat the case as though the $18.00 had been paid. At the end of the year, which-was about June 30,1899, Mr. Ward, *702 who had theretofore been receiving his salary from month to month, at the rate of $1,800 a year, declined to accept the payment then tendered him as the balance at the same-rate, but then set up for the first time his claim for the addition or increase of $700.
In answer to this petition the defendant admits a large part of that which is averred therein,and then avers a single defense in various forms, namely: that Ward voluntarily
gave up his position of superintendent of ward schools and* relinquished whatever right or claim he might have had to-this extra compensation or increase of $700 a year, and that he did this in consideration of his appointment to the position of principal of the Jefferson street school at $1,800 a year; that there was a mutual rescission of the contract under which he was to serve as superintendent of ward schools for $2,500 a year.
The statute governing boards of education in the matter of fixing the compensation of teachers and superintendents-permits such boards to increase the salaries or compensation of teachers during the terms for which they have been employed. I read section 4017, Revised Statute:
“Each board of education shall have the management and control of the public schools of the district with full power to appoint a superintendent and assistant superintendents of the schools, a superintendent of buildings, janitors, and other employes, and fix their salaries, and shall fix the salaries of the teachers, which salaries may be increased but shall not be diminished during the term for which the appointment is made. ”
The part of the statute read is the same as that in force at the time the contract and transaction involved transpired and were made.
It is contended on behalf of plaintiff in error that since the board of education voluntarily increased the salary of Mr. Ward from $1,800 to $2,500, that vested in him a legal-right to demand and recover that amount for the term.
If a superintendent of schools were a public officer, it is clear that this provision would not be constitutional. In some aspects his position is like that of a public officer. He seems to be a quasi-public officer; and yet we are not prepared to say that the constitutional provision on the subject *703 of salaries of public officers applies to a superintendent of public schools. Ilfwill^refer to those provisions only because they indicate the policy of the state upon the subject of salaries of public servants. Section 81, article 2, provides that the salaries of members of the legislature shall not be increased during their term; section 19, article 3, makes the same provision as to'executive officers; section .14,article 4, makes the same provision as to judicial officers; section 2, article 2, places this limitation upon the powers of the legislature:
“The general assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term unless the office be abolished.”
Section 3982, Revised Statutes, provides:
“A majority of the board of education shall constitute a quorum for the transaction of business; upon a motion to adopt a resolution * * * to employ a superintendent, teacher, janitor, or other employe, or to elect or appoint an officer, or to pay any debt or claim.”
The vote shall be taken in a certain, way, etc. The petition avers, and the answer does not contradict the statement, that this superintendent was an employe; that is to say, that he was employed at a certain.salary for a certain term. Taking the statute and the. averments together, we believe that Ward as superintendent was not an .officer, but was an employe. ■
Assuming, therefore,that he was not an officer within the purview of the provisions of the constitution that I have read, but that he was an employe, and that this payment of $700 per year extra to him, this increase, would have been a legal payment if made, it does not follow that because the board of education promised it to him, he thereby acquired a legal claim thereto, enforcible in the courts. Since this point is not raised expressly by the pleadings, and does not seem to have been considered in the court below, and has not been presented by counsel here, we have taken more than usual pains in examining into the question, and our conclusion is that this promise of extra compensation was a mere nudum pactum. Although a teacher may have a vest *704 ed right in a contract that cannot be impaired by legislation, though such' legislation, like that involved here, may take the form of abolishing the position, providing, as it does, for the selection of a superintendent of instruction, and repealing the law providing for a superintendent of schools, still,such contract entered into between the teacher and the board of education is subject to the general rules governing the validity of contracts. It has been said by our supreme court in Turnbull v. Brock, 31 Ohio St., 649, per curiam: “A promise not supported by a consideration creates no legal obligation; and hence its non-performance creates no legal liability.”
This extract from Pollock on Contracts,section 162,gives the general rule upon the subject in a very concise form: ‘‘Neither the promise to do a thing, nor the actual doing of it, will be a good consideration, if it is a thing which the party is already bound to do, either by the general law or by a subsisting contract with the other party.”
It will be observed that Mr, Ward has averred in his petition (and his testimony is consistent with the averment, and is not controverted) that a proposition Was made to him by the board of education to employ him at the rate of $1,800 a year, and that he accepted it; that he entered into such a contract with the board of education, and entered upon the performance of his duty as such teacher or superintendent of ward schools for the term ending on June 30, 1899. He was therefore under a legal contractual obligation to serve in that capacity for that period at that salary. I read from the notes to the section.of Pollock on Contracts from which I have quoted the following illustrations of the application of the rule:
‘‘A promise to pay sailors in consideration of their agreeing to finish a voyage is without consideration, Bartlett v. Wyman, 14 Johns, 260.
‘‘A promise to pay a witness for attendance at court more than the fees allowed by law stands upon the same footing. Dodge v. Styler, 26 Conn., 463; Sweaney v. Hunter, 1 Murphy, 181.
‘‘Or any promise made in consideration of the payment, in whole or in part, of a debt already due.”
Among the cases cited in support of this is Jenkins v. *705 Clarkson, 7 Ohio, 72, and Turnbull v. Brock, supra.
“A promise of reward to an officer for arresting a criminal whom the duties of his office required him to apprehend is both without consideration and against public policy.” Gilmore v. Lewis, 12 Ohio, 281, and many other cases,
Since the board of education is dealing with public funds, acting with respect thereto as trustees for the public, it seems to us that the law laid down in Gilmore v. Lewis, supra, is not inapplicable, and that such voluntary rewards given by a board of education should be deemed to be not only without consideration, but against public policy. So far as we know, it is the only statute of the state which authorizes public officers, who have a valid legal contract with others, to pay them extra compensation without any new or additional consideration. I call attention also to the discussion of this principle in Withers v. Ewing, 40 Ohio St., 400; Hooker v. DePalos, 28 Ohio St., 251; Johnson v. Otterbein University, 41 Ohio St., 527; Sherwin v. Brigham, 39 Ohio St., 137; also Beach on the Modern Law of Contracts, sections 157 and 158, and there many authorities will be found cited.
Here, according to the petition, arid according to the testimony of Mr. Ward,there was no rescission of the original contract; there was no new agreement and no new or additional service to be rendered or consideration moving in support of the new promise of additional compensation. It does not appear that he met with the board of education and that they came to-an agreement that his compensation should be increased by $700 a year; but the averment of his petition is that they did this on account of his meritorious services; and the part of the record which is introduced indicates the same thing. It reads as follows:
“Mr, McKee offered the following and moved its adoption :
“Whereas, that on January 31, 1898, Prof. J. I. Ward was elected superintendent of our public ward schools for the period of Mr. A. A. McDonald’s unexpired term at the salary of $1,800 per year.
“Whereas, said salary is not commensurate for the services of superintendent of our public ward schools; and
“Whereas, said superintendent J. I. Ward has shown *706 ■most remarkable ability in efficiency as superintendent of ■our public ward schools, and is entitled to more pay for his •services.
“Therefore be it resolved, that the salary of our superintendent J. I. Ward be increased to $2,500 per year for the remainder of Superintendent J. I, Ward’s term, ending June 30, 1899, said increase to begin on the 1st day of April, 1898:
“Adopted, Yeas — Messrs. Canfield,Klein, Gifford, McKee, McFillan, Roulet, Rutherford, Tucker, and Wheeler. No — Seagrave, ”
He appears to have continued right along in the same employment, performing the same services during the remainder of that school year, but after the adoption of this resolution he drew his salary at the rate of $2,500 a year, until this other action was taken by Mr. Chalmers, the superintendent of instruction, assigning him to a different position and different duties. There were no new or additional or different duties or responsibiiities assumed by or imposed upon Mr. Ward; no new promise was made to Ward directly, and Ward on his part promised nothing new. It is, as it appears to be, simply a gratuitous reward promised for meritorious services. In so far as it has been paid, the legality of the payment is not drawn in question here; and I may say, that in so far as he has been paid, the payment is authorized by the statute that I have read; but in so far as it has not been paid, it stands upon the footing of promised but unexecuted gift, a gratuitous promise, and therefore it is not enforcible. Beach on the Modern Law of Contracts, sections 5 and 203. So we are of the opinion that the plaintiff Ward should have failed, because his petition' fails to state a cause of action, and because the evidence, which does go beyond his petition, fails to show a valid claim,
The fact that the promisor is a public board acting in pursuance of express power given by the statute we do not regard as materially affecting the case.
The statute conferring the power upon the board of education to promise and pay may be so far valid as to justify the board in paying in pursuance of such promise. But the statute conferring the power does not necessarily impose a *707 correlative duty. We think that promise» made-by such board are still subject to the ordinary rules as to consideration being necessary to make them obligatory. An individual has the power to make such naked promises, and may legally perform them, but he cannot be compelled to do so. - The statute puts the board on the same footing as the individual or natural person in this respect. Tf the rule of the board or the original contract should provide for a raise in the salary after a certain term of service, or upon the accomplishment of certain things, or proof of certain merit or imposition of additional or different duties, or the like, the ■case would be quite different from that at bar, for in such •case the promise would be based on a new consideration, or would be supported by the original consideration.
If, however, we should find ourselves able to get beyond this point in the case, looking then into the evidence, we ■are of the opinion that the conduct of Mr, Ward indicates very clearly and conclusively a willingness upon his part, and a purpose, to accept of this new position at the rate of •$1,800 a year, and relinquish his old position, which under ■this resolution of April 4 gave him $2,500. It appears that after Mr. Ward had been employed the so-called “Niles Law,’’ 93 O. L,, 485, relative to the board of education of Toledo, had been passed by the legislature, that having been passed on March 23, 1898; that after the passage of this Niles law, and after the board of education provided for in the Niles law had been elected, that is to say, on the evening of election day, this resolution increasing the salary of Mr. Ward was adopted. This act provides, in section 5 as -follows:
“The board shall organize on the third Monday of April, 1898, and annually thereafter. The member of the board whose term shall expire at the end of the current year shall be president of the board for such current year, and shall have sole power to appoint all standing and other committees of said board. The board shall at its first meeting, or as soon thereafter as may be, employ a superintendent of instruction, and also a business manager for a term not to exceed two years. The business manager shall also be clerk of the board, and discharge all the duties imposed by law upon such officer. ' '
*708 “Sec. 6. The superintendent of instruction shall have the power to appoint and discharge, subject to the approval and confirmation of the board, all teachers and assistants, authorized by the board to be employed. He shall report in writing to the board monthly and oftener, if required', as to all matters under his supervision, and may be required by the board to attend any or all of its meetings.”
It appears that Mr. Chalmers was appointed to the position of. superintendent of instruction, and that upon July 22, 1898, he sent to Mr, Ward the following notice:
“Mr. J. I. Ward: Dear Sir: — You are hereby advised that you have been appointed a teacher in the Toledo Public Schools,subject to the provisions of law and the rules or orders which are or may be in force relative to the employment and compensation of teachers and government of the schools.
“In case of your acceptance of the appointment, you will please fill out the blank hereto attached, and file the same in the office of the superintendent, within thirty days. A failure to do so will be held to be a declination of the appointment. Very respectfully yours, W. W. Chalmers, Superintendent of Instruction.”
Instead of at that time making known to Mr, Chalmers or to the board of education that he claimed the right to serve under his previous employment at the rate of $2,500 per year, or of questioning the right of Mr, Chalmers as superintendent of instruction to assign him to duties inconsistent with those which devolved upon him as superintendent of ward schools, Mr. Ward, without a word of objec-' tion, signed and returned to Mr. Chalmers an acceptance of this appointment which reads as follows: “Toledo Public Schools. Teacher’s acceptance, ' To be torn off and returned to the office. To W. W. Chalmers,Supt. of Instruction. I have received your notice of appointment, dated June 10, 1899,and hereby declare my acceptance of the position, under the conditions named. Respectfully, J. I. Ward,”
Now, Mr. Chalmers having notified Mr. Ward that if he did accept this position, he must do it subject to the provisions of the law then in force, which provisions of law gave to the superintendent of instruction the power to appoint, as I have read, it is quite apparent that Mr. Ward *709 did not regard this as simply an assignment by his superior to other and different duties under the original appointment, but that he could not have understood it as being anything else than a refusal to recognize him as superintendent of ward schools. As I have stated, he entered upon the performance of these duties without a word of objection and without a word of suggestion that he would insist upon this extra compensation of $700 a year, and he did not make known that he entertained any purpose of making a claim of that character until the expiration of the full term, to-wit: about the 30th of June, 1899.
T. JSF. Bierly and G. W. Everett, for Plaintiff in Error.
M. JR. Brailey, G. K. Friedman and C. S. JSforthrup,tor Defendant in Error. ,,
We think, therefore, that not only because of the resolution to pay him the extra compensation of $700 a year was not enforcible, it being a mere naked promise, but because even if it had been a valid promise, he had voluntarily relinquished that position, and with it necessarily the salary going with it, and accepted another position requiring of him different duties, making it impossible for him to perform the duties of superintendent of ward schools, the direction of the trial judge to the jury was correct.
There being no other question in the record, the judgment of the court of common pleas will be affirmed.
Note— Thomas N. Bierly, for Plaintiff in Error: Proposition ®f law in point. The rule of damage. See 44 Ohio St., 226.
To constitute a substitution, see, Wood on Master and Servant, Page 106; 16 Penn. St., 196; Mechem on Agency, section 6625; Clark on Contracts,pages 187-192 and 612; 6 Ohio St., page 1; Greenleaf on Evidence, Vol. 1 page 394 (14th ed.).
Wood on master and servant pages 306-307-268-269-205; Beach on Mordern law of Contracts Vol. 1 pages 86-94 and especially on page 778, and eases cited; Amer Ency. of Law, Vol. 14, pages 772-797, 91st Ed.; Pension section 397b.
Clayton W. Everett, for Defendant in Error, cited: The Toledo School Act passed March 23rd, 1898. Session Laws 1898, page 485.
Superintendent of Instructions. His powers and Duties, sec. 6 and 6 of page 486.
The Board alone has power to fix the compensation of teachers and their duties, sec. 4, page-486,
Compensation of a teacher may be increased but not reduced during the term of employment, sec. 4017 of the Bevised Statutes.